P. E. PITTMAN, Executrix, v. C. A. CAMP, et. al.

*Evidence— Communications, &c., under* §590.

1. It is not error to allow the plaintiff to ask one of his witnesses where he lives, with the purpose of showing that he lives with the defendant, when the Court does not allow the fact to be used to impeach the witness.

2. An executor is competent to testify to transactions between his intestate and the defendant of which he has knowledge, which are in favor of the estate of the intestate and adverse to the defendant.

(*Peacock* v. *Stott*, 90 N. C., 518, cited and approved).

CIVIL ACTION, heard before *Shepherd, Judge,* and a jury, at Spring Term, 1886, of the Superior Court of HALIFAX county.

The parts of the case settled upon appeal, necessary to understand the opinion of the Court, are as follows:

"In order to prove that defendant Camp had used part of the crop made on testator's land in 1883, the plaintiff introduced a witness, Henry Arrington, who testified, "I lived on testator's place the year he died. I hauled nine bales of cotton the fall of 1883, to Enfield for Camp." Upon his cross-examination, he testified, "Mr. Pittman, (meaning plaintiff's testator), had turned over the control of the plantation to Mr. Camp, first week in May, 1881." On his re-direct examination witness testified: "Mr. Pittman said he had given everything up to Mr. Camp." As soon as the witness had made the last answer, plaintiff's counsel asked him : "Where do you live now"? the defendants objected to the question, on the ground that it was only competent to impeach the witness, which plaintiffs could not do, and asked if that was not the purpose.

Plaintiff's counsel replied, "Your Honor can well see why I asked it," and made no further explanation. The Court admitted the answer, but not for the purpose of impeaching the witness, nor was the answer used for such a purpose in the argument of counsel, or during the trial. Defendants excepted, and witness then answered : "I live at Mr. Camp's."

In order to disprove the contract set up by the defendant Camp, the plaintiff, who is the executrix of the testator, and a legatee under his will, was introduced as witness for plaintiff, and after objection by the defendant, was permitted to testify as follows: " I saw my husband, (meaning her testator,) pay money to Camp; sometimes Camp would ask for money to pay hands; heard him ask for it."

For the same purpose, she was further permitted to testify, after objection by defendant, that " testator sold cotton in the summer of 1883; crops of 1881 and 1882, sold by Camp; my husband was afflicted, and had to get Camp to do it. He would bring the money and give it to my husband. In 1883, I don't know what he did with the money. In 1883, I heard my husband tell Camp that he wanted to have him, (my husband,) like he, (Camp,) was when he came there; that he had to go to him for all the money he got. Camp said yes. Mr. Pittman said he would show him that when the twenty bales of cotton was sold, he intended to have some. This conversation was some time before the cotton was sold."

The defendant excepted to the foregoing evidence, so far as it recited a conversation or transaction between the testator and the defendant Camp, in witness's presence. The Court ruled that she could testify as to any declaration made by Camp, although such declarations were made in a conversation between Camp and the testator. Defendants excepted.

Camp was alive at the trial, and testified in this action, denying the testimony of Mrs. Pittman, the plaintiff.

Verdict and judgment for the plaintiff, and the defendant appealed.

*Messrs. R. O. Burton, Jr.*, and *W. H. Day*, for the plaintiff.
*Mr. John A. Moore*, for the defendant.

MERRIMON, J. (after stating the facts). The question " where do you live?" and the answer to it, were of slight importance in

any view of them. The evidence elicited was not irrelevant, because it tended to identify the witness, and to show in some slight degree, his opportunity to be informed in respect to the matter about which he was testifying. If it tended to impeach the witness at all, as perhaps it did very slightly, it did so remotely and incidentally. The Court did not allow the question to be answered with the view to impeach, nor was the answer so used on the trial. So that, the exception in this respect, cannot be sustained.

The plaintiff testified as to what the defendant said to her intestate in his lifetime, and as to transactions between them, of which she had knowledge. It is obvious that she was not testifying adversely to her intestate, but against the defendant, and he was present and competent to testify in his own behalf, and contradict her. Indeed, he was examined, and did so, and hence suffered no prejudice.

It is not the purpose of the statute, (The Code, §590,) to exclude evidence "concerning a personal transaction or communication" between a surviving party and a deceased person, where the executor or administrator of the latter sues the surviving party, and offers to testify on the trial as to such "transaction or communication." The purpose is to prevent the surviving party from testifying in such respect, because, the deceased person, whose estate is to be affected, cannot be present to testify in his own behalf. The statute cited, expressly provides that such evidence cannot be given "*except* where the executor, administrator, survivor, committee or person so deriving title or interest, is examined in his own behalf, or the testimony of the lunatic or deceased person is given in evidence concerning the same transaction or communication." *Peacock* v. *Stott*, 90 N. C., 518.

In this and like cases, the defendant is on the same footing as if the deceased party were alive and testifying in his own behalf. This exception of the appellant is therefore groundless, and the judgment must be affirmed.

No error.                                         Affirmed.